IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EXCELSTOR TECHNOLOGY, INC., )
et al., )
 )
      Plaintiffs, )
 )
v. )  No. 07 C 2467
 )
PAPST LICENSING GMBH & CO. KG, )
 )
      Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Papst Licensing GMBH & Co. KG's ("Papst") motion to dismiss. For the reasons stated below, we grant the motion to dismiss.

## BACKGROUND

Plaintiffs allege that they are related business entities (collectively referred to as "ExcelStor"), which manufacture computer products such as data storage devices known as hard disk drives ("HDDs"). ExcelStor contends that in January 2004 it entered into a licensing agreement with Papst ("ExcelStor Agreement"), that permitted ExcelStor to make and sell HDDs covered by Papst's patent in exchange

1

for the payment of royalties that were paid to Papst. According to ExcelStor, at the time it entered into the ExcelStor Agreement, it was unaware that Papst had already entered into another licensing agreement ("Hitachi Agreement") under which Hitachi agreed to cover the payment of royalties for the manufacture of the same HDDs that were the subject of the ExcelStor Agreement. Neither ExcelStor nor Hitachi were allegedly aware of the terms of the other party's agreement with Papst due to confidentiality clauses in each of the agreements.

The ExcelStor Agreement allegedly contained a section that provided that Papst was obligated on a quarterly basis to notify ExcelStor in writing whether Papst had obtained a second royalty license for the HDDs that ExcelStor manufactured for Hitachi or others ("Notice Provision"). ExcelStor alleges that Papst sent ExcelStor a notice letter on April 2, 2004, indicating that Papst was not being paid royalties for the HDDs by any company other than ExcelStor. This statement was allegedly false in light of the royalties that Papst received from Hitachi. Papst allegedly continued to make false representations in notices sent to ExcelStor through January 2007.

ExcelStor contends that its counsel was concerned about the potential terms included in the Hitachi Agreement. Papst representatives allegedly assured ExcelStor that Papst was not receiving royalties from companies other than ExcelStor. Papst representatives also allegedly represented that the Hitachi Agreement was formed after the formation of the ExcelStor Agreement, which ExcelStor contends would mean that any royalties paid by Hitachi did not apply to

the restrictions of the ExcelStor Agreement. According to ExcelStor, its counsel finally was able to convince Papst to agree to a limited waiver of the confidentiality provision in the Hitachi Agreement. ExcelStor obtained drafts of the Hitachi Agreement that showed that the Hitachi Agreement was formed before the ExcelStor Agreement and that Hitachi was obligated to pay royalties to Papst. ExcelStor brought the instant action and included in its amended complaint claims seeking a declaration that Papst violated the patent exhaustion doctrine and a declaration that the ExcelStor Agreement violates the patent exhaustion doctrine (Counts I and II), a fraud claim (Count III), and a breach of contract claim (Count IV). Papst moves to dismiss the instant action for lack of subject matter jurisdiction.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.; see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded

3

factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946. For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in regards to a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

## DISCUSSION

Papst argues that this court lacks subject matter jurisdiction in this case. ExcelStor contends that this case is based upon federal patent law and alleges in the amended complaint that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338. (A. Compl. Par. 2). ExcelStor solely alleges that this court has federal question subject matter jurisdiction and does not claim that this court has diversity subject matter jurisdiction. (A. Compl. Par. 2).

## I. Legal Arguments Included in Amended Complaint

We first note that Papst initially filed a motion to dismiss the original complaint, arguing as it does in the instant motion to dismiss, that this court lacks subject matter jurisdiction in this case. Instead of responding to the motion to dismiss, ExcelStor filed the amended complaint. In the amended complaint, ExcelStor, added to the complaint a series of legal arguments and citations referring to federal patent law. ExcelStor alleges, for example, in the amended complaint that "[f]irst announced by the United States Supreme Court over 150 years ago in the case of *Bloomer v. McQuewan* 14 How. (55 U.S.) 539 (1852), the Patent Exhaustion/First Sale Doctrine is the canonical principle of patent law in both the United States and England." (A. Compl. Par. 3). While a complaint must include factual allegations and can identify specific causes of action, a complaint is not the proper document for presenting legal arguments. ExcelStor's amended complaint contains dissertations on federal patent law and cases in support, thus creating the appearance that its claims are related to federal patent law. ExcelStor has also included conclusory statements concerning federal subject matter jurisdiction such as ExcelStor's allegation that ExcelStor "bring[s] this action . . . based strictly upon the application of the Patent Exhaustion Doctrine . . . of the United States patent laws." (A. Compl. 1). However, the facts that are the underlying basis for ExcelStor's claims control the causes of action pled by ExcelStor. *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.

1994)(indicating that "[o]ne pleads a 'claim for relief' by briefly describing the events"); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)(stating that under the federal notice pleading standard "a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations").

ExcelStor argues that it has "the absolute right to decide and choose how they plead their claims and the law upon which such claims rely for purposes of establishing federal subject matter jurisdiction." (Ans. Mot. 1). That statement is correct with regard to the intention of ExcelStor. However, while a plaintiff is the master of its own complaint in regards to factual allegations, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006), it is a well established principal that the parties, even by agreement, cannot confer federal jurisdiction on themselves. *See Shapo v. Engle*, 463 F.3d 641, 645 (7th Cir. 2006)(stating that "[p]arties cannot confer federal jurisdiction by agreement"); *Price v. Pierce*, 823 F.2d 1114, 1119 (7th Cir. 1987)(stating that "since parties cannot confer federal jurisdiction by stipulation, they cannot confer federal jurisdiction by agreeing that their dispute shall be governed by federal law"). Thus, ExcelStor has not caused the claims included in the amended complaint to be based on a substantial question of federal patent law, merely by discussing and citing federal patent law or including conclusory jurisdictional statements in the amended complaint.

ExcelStor also argues that the Seventh Circuit recognized in *Unique*

6

*Concepts, Inc. v. Manuel,* 930 F.2d 573 (7th Cir. 1991) that "if plaintiffs, as ExcelStor has done here, decide to plead a case so that they must succeed on an issue of federal patent law in order to prevail, then there is federal jurisdiction under Section 1338." (Mot. 1-2). However, ExcelStor misunderstands the holding in *Unique*. In *Unique*, the Court noted that in *Kennedy v. Wright,* 851 F.2d 963 (7th Cir. 1988) the court previously held that "when the district court's jurisdiction depends in part on § 1338, the appeal lies to the Federal Circuit even if the relief depends entirely on state law." 930 F.2d at 574. The court in *Unique* thus did not hold that a plaintiff can proceed in federal court, by invoking federal patent law, when in fact its claim is not based on federal patent law. Rather, the court merely reaffirmed the holding in *Kennedy* that appellate jurisdiction belongs to the Federal Circuit Court of Appeals over rulings in cases in which subject matter jurisdiction is based upon Section 1338. 851 F.2d at 964, 969. Thus, the underlying question is whether, based on the facts included in the amended complaint, ExcelStor's claims are truly based on federal patent law. Therefore, the additional information and statements concerning federal patent law included in the amended complaint do not establish that there is federal subject matter jurisdiction in this case.

## II. Relation of Allegations to Federal Patent Law

ExcelStor argues that its claims are based on federal patent law. Pursuant to 28 U.S.C. § 1338 ("Section 1338"), "[t]he district courts shall have original

7

jurisdiction of any civil action arising under any Act of Congress relating to patents. . . ." 28 U.S.C. § 1338(a). In order for a district court to have jurisdiction under Section 1338, the "plaintiff's well-pleaded complaint" must plead a cause of action created under federal patent law or plead a claim that "'necessarily depends on resolution of a substantial question of federal patent law. . . .'" *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 830 (2002)(quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808 (1988)). ExcelStor argues that its claims in the instant action are dependant on a ruling based on the first sale doctrine otherwise referred to as the patent exhaustion doctrine.

### A. Declaratory Relief in Regard to Exhaustion Doctrine (Counts I and II)

ExcelStor requests in Count I a finding by the court, under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that Papst violated the patent exhaustion doctrine and ExcelStor requests in Count II a finding by the court, under the Declaratory Judgment Act, that Section 4.3 of the ExcelStor Agreement is not enforceable in light of the patent exhaustion doctrine. We first note that ExcelStor cannot base federal subject matter jurisdiction on the Declaratory Judgment Act since it does not independently confer federal subject matter jurisdiction. *See Ameritech Ben. Plan Committee v. Communication Workers of America*, 220 F.3d 814, 818 (7th Cir. 2000)(stating that "the Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of subject matter jurisdiction," and that "[i]t

allows suits for declaratory judgment where federal jurisdiction would exist in a coercive suit brought by the declaratory judgment defendant"). ExcelStor contemplates that Papst could possibly sue ExcelStor for a breach of contract for a failure to make royalty payments. However, such a state cause of action would not provide a basis for federal subject matter jurisdiction.

ExcelStor contends that this court has subject matter jurisdiction in this case because ExcelStor is entitled to relief under the patent exhaustion doctrine. Under the patent exhaustion doctrine, "[t]he unrestricted sale of a patented article, by or with the authority of the patentee, 'exhausts' the patentee's right to control further sale and use of that article by enforcing the patent under which it was first sold." *Jazz Photo Corp. v. International Trade Com'n* 264 F.3d 1094, 1105 (Fed. Cir. 2001); *LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1369-70 (Fed. Cir. 2006)(stating that the "unconditional sale of a patented device exhausts the patentee's right to control the purchaser's use of the device thereafter").

The patent exhaustion doctrine is not a source of relief for ExcelStor. It is not a cause of action that a party can bring and obtain relief such as the damages sought by ExcelStor in this action. Rather, the patent exhaustion doctrine is a defense for claims such as a patent infringement claim, prohibiting a party from suing for patent infringement to protect its proprietary rights since the party is deemed to have already received full compensation for ownership in such rights. *See Jazz Photo Corp.*, 264 F.3d at 1105 (explaining that "exhaustion of the patent right depends on

'whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article'")(quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)). The patent exhaustion doctrine is a defense to a patent infringement claim, barring a party from pursuing an infringement claim if the party has already sold the patent rights to another party. *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1332-36 (Fed. Cir. 2006)(referring to patent exhaustion doctrine as an affirmative defense and discussing whether patent exhaustion doctrine barred patent infringement claims); *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1349-50 (Fed. Cir. 2003)(discussing patent infringement analysis and presenting patent exhaustion doctrine as a defense). ExcelStor mentions that Papst brought an action against ExcelStor for patent infringement. (Ans. Mot. 14). However, ExcelStor acknowledges that the case was settled and dismissed with prejudice. (Ans. Mot. 14, 14 n.3). ExcelStor theorizes that Papst could move to vacate the dismissal of the other action. However, whether Papst will take such a step and whether the court will grant such a request is pure speculation at this juncture. ExcelStor has not shown that any such actions are imminent or likely. *See Hyatt Intern. Corp. v. Cocom*, 302 F.3d 707, 712 (7th Cir. 2002)(stating that "[t]he declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative"). Also, even if Papst were able to reopen the patent infringement case, that would be the most efficient court in which to resolve the patent exhaustion

doctrine issues as a defense to the infringement claim. Thus, ExcelStor has no legal basis to seek a declaration that Papst violated the patent exhaustion doctrine.

Similarly, ExcelStor lacks any legitimate basis to seek a declaration that Section 4.3 of the ExcelStor Agreement violates the patent exhaustion doctrine. ExcelStor is not entitled in a vacuum to have this court resolve an issue that does not present a live case or controversy. The references to the patent exhaustion doctrine by ExcelStor do not confer federal subject matter jurisdiction, and, as indicated above, parties cannot confer federal subject matter jurisdiction upon themselves. Also, the mere raising of a patent defense does not confer federal subject matter jurisdiction. *See Christianson*, 486 U.S. at 809 (stating that "a case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case'")(quoting*Franchise Tax Board of California v. Construction Laborers Vacation Trust*,463 U.S. 1, 14 (1983)); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 549 (7th Cir. 2003)(stating that "federal jurisdiction depends on the claim, not upon defenses"). Thus, ExcelStor has not shown that the declaratory judgment claims in Counts I and II are based upon federal patent law.

### B. Fraud Claim (Count III)

ExcelStor argues that the fraud claim is substantially based on patent law.

11

ExcelStor argues that it has pled that Papst made false representations in the notices sent to ExcelStor pursuant to the Notice Provision. ExcelStor contends that the notices contained "Papst's false representation that it had complied with the Patent Exhaustion/First Sale Doctrine." (Ans. Mot. 7). The Notice Provision, which is included in the ExcelStor Agreement attached to the motion to dismiss, and is central to ExcelStor's complaint can be considered for the purposes of a motion to dismiss. *See Wright v. Associated Ins. Companies Inc*, 29 F.3d 1244, 1248 (7th Cir. 1994)(stating that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" and "[s]uch documents may be considered by a district court in ruling on the motion to dismiss"). The Notice Provision states that Papst is required to "provide [ExcelStor] with written notice of whether or not [ExcelStor's] Contract Manufacturing HDD customers identified in [ExcelStor's] report paid a royalty to Papst covering any such Contract Manufacturing HDD customer's HDDs." (Pb Ex B S 4.6). The Notice Provision does not make any reference to the patent exhaustion doctrine. Nor does the Notice Provision obligate Papst to state whether it is violating the patent exhaustion doctrine. Whether or not Papst violated the Notice Provision depends on whether Papst accurately identified other customers receiving the royalties, not whether it violated the patent exhaustion doctrine.

There is also no indication that Papst specifically stated in the notices that it was not violating the patent exhaustion doctrine. ExcelStor alleges, for example,

12

that the April 2, 2004 notice stated: "This letter provides ExcelStor with written notice that no company other than ExcelStor has paid to Papst Licensing a royalty concerning the above-identified Contract Manufacturing HDDs." (A. Compl. Par. 38). The notice also allegedly provided: "pursuant to paragraph 4.6 of our companies' licensing agreement, Papst Licensing is not obligated to reimburse ExcelStor any portion of the $521,507.04 royalty payment." (A. Compl. Par. 38). ExcelStor then alleges that "Papst continued to make nearly identical written misrepresentations in other refund letters. . . ." (A. Compl. Par. 39). The basis for ExcelStor's fraud claim is the information in the notices sent by Papst to ExcelStor. The determination of whether Papst made misrepresentations in the notices involves a factual inquiry that does not require a consideration of federal patent law. Therefore, ExcelStor has not shown that the fraud claim (Count III) is based upon federal patent law.

### C. Breach of Contract Claim (Count IV)

ExcelStor argues that the breach of contract claim is based upon the patent exhaustion doctrine. ExcelStor argues that under the terms of the ExcelStor Agreement "Papst was obligated . . . to give ExcelStor an honest reporting of its conduct by providing written notice of the Patent Exhaustion/First Sale Doctrine violation." (Ans. Mot. 7). ExcelStor contends that its breach of contract claim is based upon Papst's breach of that obligation. (Ans. Mot. 7). However, as is

13

explained above, the Notice Provision does not mention the patent exhaustion doctrine or require Papst to report its compliance or non-compliance with the patent exhaustion doctrine. The Notice Provision includes specific factual requirements, with which Papst needed to comply. To the extent that ExcelStor seeks to draw parallels between the terms of the Notice Provision and the patent exhaustion doctrine, similarities between the two would have limited relevance. In determining the contractual obligations of the parties to the ExcelStor Agreement, the terms and intent of the parties in the formation of that particular agreement govern the precise obligations of the parties. ExcelStor has not shown that general principles of federal patent law would govern the contractual relationship in any way. The terms of the ExcelStor Agreement provide the necessary guidance to resolve whether Papst breached the agreement and to determine the appropriate remedy for a breach. There is no need to consult the patent exhaustion doctrine. ExcelStor's insertion of the patent exhaustion doctrine into this case does not confer federal subject matter jurisdiction.

ExcelStor also acknowledges that the remedy for Papst's breach is provided in the ExcelStor Agreement. (Ans. Mot. 7). ExcelStor does not indicate that federal patent law provides any remedy. Nor does ExcelStor show that federal patent law has any relevance in assessing the proper remedy for a breach by Papst.

Thus, there is no indication that the patent exhaustion doctrine needs to be employed in resolving the breach of contract claim. ExcelStor claims that it paid

14

Papst royalties pursuant to the terms of the ExcelStor Agreement and subsequently learned that Papst was receiving royalties from another source and that Papst did not disclose the royalties in accordance with the Notice Provision. ExcelStor contends that it is entitled to be repaid the royalties that it had already paid Papst. Such a contractual dispute is not dependant in any fashion upon federal patent law. Therefore, ExcelStor has not shown that the breach of contract claim (Count IV) is based upon federal patent law.

III. Preemption

ExcelStor also argues that the state law issues presented in this case are preempted by federal patent law. Federal law can preempt state law in three instances: "(1) when the federal statute explicitly provides for preemption; (2) when Congress intended to occupy the field completely; and (3) 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 918 (7th Cir. 2007)(quoting in part *Sprietsma v. Mercury Marine,* 537 U.S. 51, 64-65 (2002)). ExcelStor argues that "the parties' license agreement must be construed (and thus enforced) in such a way so as not to exceed the proper scope of the patent monopoly that Papst is allowed to have under U.S. federal patent law. . . ." (Ans. Mot. 12). ExcelStor contends that the federal interest in such a monopoly overrides any state interest. However, as is explained above, this action is premised upon a breach of

the terms of the ExcelStor Agreement and alleged fraud involving the execution of the agreement. ExcelStor does not allege that the Notice Provision is ambiguous and that its scope is unclear. Whether Papst violated the terms of the ExcelStor Agreement involves a straightforward examination of the terms and facts in this case. ExcelStor alleges that pursuant to the Notice Provision Papst was supposed to report certain royalties from other customers. Whether or not Papst accurately provided such notice is a question of fact. ExcelStor has not shown how any interpretations concerning the scope of the ExcelStor Agreement and its relation to Papst's patent monopoly would come into play in such an analysis. Therefore, ExcelStor has not shown that the state law issues in this case would be preempted by federal law. Also, the possibility that ExcelStor might raise federal preemption as a defense in a state action is not itself a basis for federal subject matter jurisdiction. *See Primax Recoveries, Inc.*, 324 F.3d at 549 (stating that a preemption defense does not confer jurisdiction and that "federal jurisdiction depends on the claim, not upon defenses"); *see also Board of Regents, The Univ. of Texas System v. Nippon Telephone and Telegraph Corp.*, 414 F.3d 1358, 1365 (Fed. Cir. 2003)(stating that the United States Supreme Court "did not . . . hold that patent laws preempt a patentee's right to recover under theories sounding in . . . contract"). This action revolves around a state law breach of contract claim and ExcelStor is not entitled to proceed in federal court merely because it has phrased its arguments and allegations in a manner so as to refer to federal patent law. Therefore, based on all of the above,

we grant the motion to dismiss.

## CONCLUSION

Based on the foregoing analysis, we grant the motion to dismiss.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 24, 2007